```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW HAMPSHIRE
```

Jeannette Hardy

   v.                                       Civil No. 18-cv-182-LM
                                                Opinion No. 2018 DNH 214

United States of America


# **O R D E R**

On October 4, 2016, Jeannette Hardy pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute controlled substances, heroin and fentanyl, in violation of 21 U.S.C. §§ 846 and 841, and, on February 27, 2017, this court sentenced her to serve 120 months in prison. Hardy did not file a direct appeal but now, proceeding pro se, seeks relief pursuant to 28 U.S.C. § 2255 from her conviction and sentence. In support, she raises several ineffective assistance of counsel claims, and alleges prosecutorial misconduct. She further claims that the court improperly applied a two-level enhancement under the sentencing guidelines for possession of a firearm. The government disputes Hardy's claims.[1]

---

[1] In subsequent filings, Hardy contends both that the government's response to her petition was late, in that it was not filed within 60 days of the court's March 19, 2018 order as directed, and that it failed to address all of her claims.

On October 11, 2018, Hardy filed a "motion for judicial notice." See doc. no. 9. In that filing, Hardy cites additional case law and makes further arguments concerning her ineffective assistance of counsel claims. The court construes document no. 9 as an addendum to Hardy's § 2255 petition, and addresses its arguments in this order.[2]

**STANDARD OF REVIEW**

Under § 2255, a federal prisoner may ask the court to vacate, set aside, or correct a sentence that "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). The burden of proof is on the petitioner. Wilder v. United States, 806 F.3d 653, 658 (1st Cir. 2015). Once a prisoner requests relief under § 2255 the district court must grant an evidentiary hearing unless "the motion and the

---

Contrary to Hardy's arguments, the government timely filed its response to her petition on May 17, 2018, 59 days after the court issued its order, and the response addressed all of Hardy's claims.

[2] Hardy has also filed a motion to adopt the arguments and law cited in her co-defendant's, Zakee Stuart-Holt's, § 2255 petition with regard to the consent search of her apartment (doc. no. 7). Stuart-Holt's petition raises similar grounds to Hardy's with regard to the consent search of the apartment. See Stuart-Holt v. United States, 17-cv-748-LM. The government does not object. In light of Hardy's pro se status, the court grants Hardy's request to consider the arguments raised and law cited in Stuart-Holt's petition to the extent they pertain to the consent search of the apartment.

files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). If the district court does not hold an evidentiary hearing, the allegations set forth in the petition are taken as true "unless those allegations are merely conclusory, contradicted by the record, or inherently incredible." Ellis v. United States, 313 F.3d 636, 641 (1st Cir. 2002).[3]

## BACKGROUND

On June 22, 2015, Hardy was assaulted by an unknown man as she attempted to enter her apartment building and then was shot in the hand by him as she escaped and ran outside. In the aftermath of the shooting, Hardy, while in the hospital, made statements to law enforcement officers and signed a consent form, authorizing them to search her apartment for evidence related to the shooting. While searching Hardy's apartment, which she leased with Zakee Stuart-Holt, officers discovered a large amount of what they believed to be heroin. Law enforcement officers subsequently obtained a warrant, searched

---

[3] Hardy does not request a hearing, and, as is explained below, Hardy's and the government's filings, as well as the record from Hardy's criminal case, conclusively show that Hardy is not entitled to the relief she seeks. Therefore, a hearing on Hardy's motion is unnecessary.

the apartment, recovered a large quantity of fentanyl, and arrested Hardy.

Hardy was indicted on one count of conspiracy to distribute and possess with intent to distribute controlled substances, heroin and fentanyl, in violation of 21 U.S.C. §§ 846 and 841. On October 16, 2015, Magistrate Judge Andrea Johnstone appointed Attorney Jaye Rancourt to represent Hardy.

On November 17, 2015, Hardy and Stuart-Holt, who had also been indicted on a charge of conspiracy to distribute and possess with intent to distribute controlled substances, as well as a charge of money laundering, moved to suppress evidence seized during the searches of the apartment. Hardy also moved to suppress certain statements she made following the shooting.

On January 14 and 15, 2016, the court held evidentiary hearings on the motions to suppress. During the hearings, several Manchester Police Department officers testified, as did two medical professionals. The court heard oral argument on the motions to suppress on January 22, 2016. On February 25, 2016, the court denied the motions. See United States v. Casellas, 149 F. Supp. 3d 222 (D.N.H. 2016).

Hardy subsequently pleaded guilty to the charged offense. The court sentenced her to 120 months' imprisonment.

**DISCUSSION**

Hardy moves to vacate her conviction and sentence under 28 U.S.C. § 2255. In support, Hardy asserts four claims of ineffective assistance of counsel. She claims that her attorney was ineffective for: (1) failing to argue in the suppression motion that Hardy's consent to search her apartment was involuntary because the police did not permit her to speak to Stuart-Holt before she provided consent; (2) failing to argue in the suppression motion that the police violated the Fourth Amendment by searching and field testing a substance found in her residence; (3) failing to argue in the suppression motion that the evidence log showed that the seizure of a bag containing drugs went beyond the scope of her consent-to-search; and (4) advising her to plead guilty when there was no evidence that she possessed heroin. In addition, Hardy claims that the court improperly applied a two-level enhancement under the sentencing guidelines for possession of a firearm. The court addresses each claim in turn.

I. Ineffective Assistance of Counsel

When a § 2255 petition is based on ineffective assistance of counsel, the petitioner "must demonstrate both: (1) that 'counsel's performance was deficient,' meaning that 'counsel made errors so serious that counsel was not functioning as the

5

"counsel" guaranteed the defendant by the Sixth Amendment'; and (2) 'that the deficient performance prejudiced the defense.'" United States v. Valerio, 676 F.3d 237, 246 (1st Cir. 2012) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)).

Under the deficiency prong, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal quotation marks omitted). Under the prejudice prong, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Failure to satisfy either the deficiency or prejudice prong defeats an ineffective-assistance-of-counsel claim. Id. at 700.

### A. Phone Call with Stuart-Holt

Hardy faults her attorney for failing to argue in her suppression motion that Hardy's consent to search her apartment was involuntary because the police did not allow her to speak to Stuart-Holt on the telephone prior to giving consent while she

was in the hospital. Hardy includes with her motion her affidavit, in which she states that she wanted to speak to Stuart-Holt, but the officers refused her request.[4] See doc. no. 1 at 7-8.

In its order denying Hardy's and Stuart-Holt's motions to suppress, the court addressed the circumstances surrounding Hardy signing the consent-to-search form, as well as Stuart-Holt's phone calls to Hardy while she was in the hospital:

> About 15-20 minutes after he arrived at the hospital, [Detective] Leshney took a telephone call at the nurses' station from someone claiming to be Hardy's husband. Leshney asked the caller for his name several times before the caller hung up. Several minutes later, MCHC Sergeant Matthew Lamanuzzi called the nurses' station. Lamanuzzi told Leshney that inmate Stuart-Holt was concerned for Hardy's welfare because Stuart-Holt was on the phone with Hardy when she was shot. Leshney asked Lamanuzzi to have Stuart-Holt call him back on his cell phone. Leshney testified that he wanted to speak with Stuart-Holt to gather information about the shooting and the surveillance system.[5]
> 
> After speaking with Lamanuzzi, Leshney and [Sergeant] Bergeron asked Hardy for consent to search her apartment for evidence of the shooting and to collect the DVR. Leshney presented Hardy with a standard MPD consent form that authorized officers to collect "any letters, papers, materials or other property which they may desire." Hardy asked Leshney about the

---

[4] In her affidavit, Hardy also states that prior to signing the consent form, she asked to make a phone call to contact her family. Hardy asserts that the officers denied her request.

[5] Hardy had previously informed the officers that she had a surveillance system that should have captured the shooting, and that the footage was stored on a DVR located in her apartment.

7

> meaning of that phrase, and he told Hardy that their
> search of the apartment would focus on looking for
> evidence of the shooting and collecting the DVR.
> Leshney also explained that if Hardy did not consent
> to a search of her apartment, he would apply for a
> warrant. Leshney explained that a judge might not
> approve the application, but if the judge did, the MPD
> would search her apartment pursuant to the warrant.
> Hardy then signed the consent form at approximately
> 10:15 p.m.

Casellas, 149 F. Supp. 3d at 228-29.[6]

Assuming that Hardy expressed a desire to speak to Stuart-Holt prior to signing the consent form and that the officers refused her request, Hardy has not shown that her attorney's failure to raise that argument constitutes ineffective assistance of counsel. First, "there is no absolute constitutional right to a telephone call during police questioning," particularly prior to an arrest. United States v. Schaefer, 859 F. Supp. 2d 397, 408 (E.D.N.Y. 2012), aff'd, 519 F. App'x 71 (2d Cir. 2013). That is especially so where, as here, the investigation revealed that Stuart-Holt was on the telephone with Hardy at the time she was shot so he was a witness to the crime. Leshney had a policy of prohibiting

---

[6] Stuart-Holt subsequently called Leshney's cell phone and asked to speak with Hardy. Leshney refused to allow Stuart-Holt to speak with Hardy because, as Leshney explained at the suppression hearing, "he had a policy of prohibiting witnesses from speaking to one another during an investigation. Since Hardy was on the telephone with Stuart-Holt during the shooting, he did not want to permit them to speak to each other while the investigation was underway." Id. at 230.

8

witnesses from speaking to one another during an investigation. Thus, the police had "valid law enforcement reasons" for not allowing Hardy to speak to Stuart-Holt.  Id.

Although a phone call is not constitutionally required, the refusal to permit a call may be relevant to the voluntariness of a defendant's consent.  "To determine whether consent was voluntary, [the court] examine[s] the totality of the circumstances, which may include consideration of the defendant's 'age, education, experience, knowledge of the right to withhold consent, and evidence of coercive tactics.'"  United States v. Hinkley, 803 F.3d 85, 91 (1st Cir. 2015) (quoting United States v. Chaney, 647 F.3d 401, 407 (1st Cir. 2011) (further citations omitted)).  Thus, depending on the "totality of the circumstances," the denial of a phone call could render a "situation sufficiently coercive that the defendant's consent was not voluntary."  Schaefer, 859 F. Supp. 2d at 409.

Here, however, the circumstances surrounding Hardy's signing of the consent form show that the alleged denial of Hardy's request to speak to Stuart-Holt did not undermine the voluntariness of Hardy's consent.  In her motion to suppress, Hardy argued that her consent to search was not valid because the police obtained it through coercion.  The court examined the circumstances surrounding Hardy's consent, including Leshney's

statements to Hardy that he would apply for a search warrant in the event she withheld consent, the purpose for the search, and Hardy's physical and mental state prior to giving consent, including evidence that Hardy asked questions seeking clarification of certain parts of the consent form. The court concluded that the government carried its burden to show that Hardy knowingly, voluntarily, and intelligently consented to the search of her apartment.

In light of those facts, even assuming that Hardy expressed a desire to speak to Stuart-Holt prior to signing the consent form and that the officers refused her request, Hardy's consent was voluntary and not coerced. The record shows that Hardy understood at the time she signed the consent form her right to refuse consent and the terms of her consent. The officers' alleged refusal to allow her to speak to Stuart-Holt does not undermine the voluntariness of Hardy's decision. See Schaefer, 859 F. Supp. 2d at 408-09 (holding that officers' refusal to allow defendant to call his brother did not undermine voluntariness of consent to search where "the defendant was presented with and signed the consent form, which explicitly stated that he had the right to decline the search" and thus "undoubtedly understood his legal right to refuse consent"); United States v. Wilson, 605 F.3d 985, 1028 (D.C. Cir. 2010)

(holding that totality of the circumstances, which included defendant reading the consent form and understanding that she did not have to sign it, rendered the defendant's consent voluntary despite her claim that officers would not allow her to make a phone call); United States v. Tejada, No. 04 CR. 1174(LMM), 2005 WL 2677891, at *3 (S.D.N.Y. Oct. 20, 2005) (A "refusal to allow a person to answer a phone call does not amount to coercion of the sort that would overcome a reasonable person's ability to come to a free and unconstrained choice."); United States v. Richter, No. ACM 32106, 1997 WL 643593, at *4 (A.F. Ct. Crim. App. Sept. 23, 1997) (holding that defendant's consent to search his residence was voluntary despite officers refusing to allow him to make a telephone call because the totality of the circumstances showed no coercion), aff'd, 51 M.J. 213 (C.A.A.F. 1999).

For these reasons, Hardy's attorney's decision to forego the argument concerning the officers' refusal to allow Hardy to speak on the phone with Stuart-Holt was not unreasonable. And, even if it were unreasonable, Hardy suffered no prejudice because the court's ruling would have remained the same. Therefore, Hardy's first ineffective assistance of counsel claim fails.

B. <u>Seizure and Field Testing of the Bag of Fentanyl</u>

During the consent search, Detective Andrew Fleming was assigned to collect, bag, and label evidence. Fleming went into Hardy's bedroom and collected the DVR, which was on top of a TV stand. The TV stand was covered with an off-white powdery substance. At the end of the search, while doing a "sweep" of the bedroom, Fleming noticed an open gray plastic shopping bag on the floor a few feet from the TV stand. Standing above the shopping bag, Fleming could see that it contained Ziploc bags, at least one of which was open and contained an off-white chalk-like object, which was the same color as the powdery substance on the TV stand. The off-white objects were wrapped in opaque wax paper. Fleming picked up the bag to get a closer look and realized the bag contained drugs. Fleming unwrapped the wax paper and field tested the contents of the bag, and the result was "presumptive positive" for heroin.[7] At that point, the officers stopped searching Hardy's apartment and sought a search warrant.

Hardy asserts two ineffective assistance of counsel claims based on Fleming opening the wax paper and field testing the contents of the bag. First, Hardy argues that her counsel was

---

[7] As it turned out, the substance was fentanyl, a controlled drug with properties similar to those of heroin.

ineffective for failing to argue that Fleming required a search warrant to open the opaque wax paper and perform a field test. Hardy acknowledges in her addendum that her counsel moved to suppress the contents of the bag and that the court held the officers' seizure of the shopping bag was permissible under the plain view exception. Casellas, 149 F. Supp. 3d at 236-38. She argues, nevertheless, that she asked her counsel to file a second motion to suppress, based on the argument that opening the wax paper and field testing the drugs required a search warrant, regardless of the plain view exception. According to Hardy, her counsel told her she would file a motion to suppress on those grounds but never did, and instead informed her that her only options were to plead guilty or go to trial.

Even if Hardy's attorney unreasonably failed to challenge the legality of opening the wax paper and field testing the drugs without a warrant, Hardy cannot show that the court would have suppressed the evidence absent her counsel's error. At the suppression hearing, the government produced the following evidence: During the consent search, the officers noticed "wads" of what appeared to be twenty- and hundred-dollar bills on a table in the living room. Fleming noted that the TV stand was covered with an off-white powdery substance, and he noticed a bag containing off-white chalk-like objects that were the same

13

color as the powder residue.  Fleming picked up the bag to get a closer look and realized, prior to the field testing, that the bag contained "a lot of drugs."  Casellas, 149 F. Supp. 3d at 231.  The court found Fleming's testimony in this regard "credible . . . in every respect."  Id. at 238 n.17.

This evidence of drug activity would have been enough to establish probable cause for the search warrant, even without the evidence that Fleming opened the opaque wax paper and field tested the drugs.  As a result, even if Hardy's counsel had filed a second motion to suppress, the court would have denied the motion.

Hardy's second ineffective assistance claim regarding the field testing is based on Fleming's testimony that the result of the field test was "presumptive positive" for heroin.  According to Hardy, this testimony was false because the shopping bag contained fentanyl, which cannot be detected using a heroin field test kit.  Hardy asserts that the prosecutor knew Fleming's testimony was false, but still offered it during the hearing in support of the validity of the search warrant, to convince the court to deny the motion to suppress and force her to plead guilty.  Viewed generously to Hardy, she claims that her counsel was ineffective for failing to object to the prosecutor's alleged misconduct and for failing to challenge

Fleming's testimony at the suppression hearing concerning the results of the field test.[8]

For the same reasons discussed above, Hardy's theory of prosecutorial misconduct does not rise to the level of ineffective assistance of counsel. Even if the government had not presented Fleming's testimony at the hearing concerning the field test, the observed evidence of drug activity would have been enough to establish probable cause for the search warrant, and the court would have denied the motion to suppress.

Therefore, Hardy has not shown any prejudice from her counsel's alleged error in failing to move to suppress evidence seized from her apartment based on Fleming's seizure and field testing of the contents of the bag. For these reasons, Hardy's second ineffective assistance claim is without merit.

---

[8] Hardy did not raise this prosecutorial misconduct claim in a direct appeal. As such, her claim would be procedurally defaulted. See, e.g., Lopez v. United States, 344 F. Supp. 2d 777, 782 (D. Mass. 2003) (holding that petitioner's claim for habeas relief for prosecutorial misconduct was procedurally defaulted because petitioner failed to raise that claim on direct appeal and could not demonstrate "cause and actual prejudice or that he is actually innocent," which would excuse the procedural default). In light of Hardy's pro se status, however, the court will address her prosecutorial misconduct claim in the context of her ineffective assistance of counsel claim concerning the field testing. See, e.g., United States v. Nelson, No. 2:16-CR-60-DBH, 2018 WL 3698904, at *1 n.1 (D. Me. Aug. 3, 2018).

15

C.  Evidence Collection Log

In her addendum, Hardy raises an issue based on the "evidence collection log" of items seized during the consent search. She contends that the log shows that the officers completed the consent search when they found and took the DVR and then went to the attic to get a box that contained marijuana and drug paraphernalia. Viewed generously to Hardy, she argues that her counsel was ineffective for failing to move to suppress the drugs found during the consent search because the evidence log shows that search had ended before officers found the drugs.

The record does not support Hardy's interpretation of the log. Contrary to Hardy's theory, the log does not show that the officers exceeded the scope of her consent because the consent search had ended before the drugs were found and tested. Instead, the record reveals that a group of officers searched the apartment to find the DVR and other evidence of the shooting. The drugs were found in plain view during that search.[9] Casellas, 149 F. Supp. 3d at 236-38.

---

[9] The court made these findings based on the evidence presented at the suppression hearing. Casellas, 149 F. Supp. 3d at 230-38. Hardy does not, and, because she did not file a direct appeal, cannot, challenge those findings. See, e.g., United States v. Rivera, No. CRIM. 03-40015-FDS, 2013 WL 6152976, at *2 n.3 (D. Mass. Nov. 21, 2013) (noting that a petitioner is procedurally defaulted from raising factual challenges for the first time in a § 2255 petition).

Hardy has not, therefore, alleged a viable ineffective assistance of counsel claim based on her counsel's failure to challenge the scope of the consent search in light of the evidence log.

D. Lack of Evidence

Hardy's fourth ineffective assistance of counsel claim is based on her guilty plea. According to Hardy, her lawyer was ineffective because she advised Hardy to plead guilty to conspiracy to distribute and possess with intent to distribute both heroin and fentanyl, despite the fact that there was no evidence to support the charge based on heroin. She asserts that had her lawyer not advised her to plead guilty, she would have gone to trial.

Hardy's argument appears to be that there was no evidence that she conspired to distribute or that she possessed with intent to distribute heroin because the drugs found in her apartment were fentanyl, not heroin. Hardy ignores, however, that the record shows that police discovered evidence that Hardy and Stuart-Holt were engaged in a drug trafficking business during which they sold substantial quantities of both heroin and fentanyl in Manchester beginning in at least July 2014. See, e.g., United States v. Jeannette Hardy, 15-cr-178-LM, doc. no. 88 at 9-11. Hardy does not explain how her lawyer was

17

ineffective for advising her to plead guilty in light of this evidence.

II. Sentencing Enhancement

Hardy's final claim is that the court improperly imposed a two-level guideline enhancement for possession of a firearm. She asserts that there was no evidence that she possessed a firearm at the relevant time.

Claims that a sentencing court erred in a guideline calculation are not generally cognizable under § 2255. Cofske v. United States, 290 F.3d 437, 441 (1st Cir. 2002); see United States v. Lopez, 52 F. Supp. 3d 354, 359 (D. Mass. 2014) ("Among other things, permitting defendants to challenge guideline calculations in a § 2255 proceeding would undermine the direct-appeal process, and result in a flood of unsubstantial, indeed trivial, non-constitutional challenges."). The limited circumstances under which such claims can be challenged under § 2255 include when "they allege jurisdictional or constitutional errors or errors that would otherwise result in a miscarriage of justice." Brown v. United States, No. 13-CV-21-GZS, 2013 WL 2474683, at *2 (D.N.H. June 7, 2013) (citing Knight v. United States, 37 F.3d 769, 772 (1st Cir. 1994)). Hardy makes no such allegations here.

Even if Hardy's claim were cognizable in the § 2255 context, a federal habeas petitioner challenging her sentence must first raise her argument on direct appeal, or her claim is deemed procedurally defaulted. See Oakes v. United States, 400 F.3d 92, 95 (1st Cir. 2005). Hardy did not raise her challenge to her sentence on direct appeal and, therefore, cannot do so in the § 2255 context.[10]

For all of these reasons, the court finds that Hardy is not entitled to relief under § 2255.

## CONCLUSION

For the foregoing reasons, Hardy's motion to adopt Stuart-Holt's arguments and law cited in his motion to vacate his sentence (doc. no. 7) is granted and her motion for relief under 28 U.S.C. § 2255 (doc. no. 1) is denied. Because Hardy has not made a substantial showing of the denial of a constitutional right, the court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Rule 11(a), Rules

---

[10] As mentioned above, despite a procedural default, "a federal habeas petition will be allowed to go forward if the petitioner can show either (i) that there is cause for the default and actual prejudice resulting from it, or (ii) that he is actually innocent of the offense of conviction." Oakes, 400 F.3d at 95. Hardy has not attempted to satisfy this standard.

19

Governing Section 2255 Proceedings. The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

November 2, 2018

cc: Jeannette Hardy, pro se
    Seth R. Aframe, Esq.